NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0364n.06
Filed: May 24, 2006

No. 04-6516

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| THOMAS G. CHENEY, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: BOGGS, Chief Judge; SUTTON, Circuit Judge; and SCHWARZER, District Judge[*]

SUTTON, Circuit Judge. Thomas Cheney pleaded guilty to being a felon in possession of a firearm, and the district court imposed a 37-month sentence under the then-mandatory sentencing guidelines. Because the district court did not err in calculating his guidelines sentence and because it issued an identical, alternative sentence in the event the Supreme Court invalidated the guidelines, as of course it did, *see United States v. Booker*, 543 U.S. 220 (2005), *United States v. Christopher*, 415 F.3d 590, 593 (6th Cir. 2005), we affirm.

---

[*] The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

I.

Officer Christopher McDonald of the East Ridge, Tennessee Police Department received a tip that Thomas Cheney and others were selling methamphetamine and cocaine from a unit in a storage facility. Upon arriving at the storage facility at 10:30 p.m., Officer McDonald obtained permission from the facility's owner for him (and by then another officer who had arrived on the scene) to search the facility. Soon after entering the facility, the two officers encountered Cheney working on a car in front of an open door to one of the units. Cheney identified himself to the officers, after which McDonald heard what sounded like a pistol hit the ground. Shining his light on Cheney, he saw a .38-caliber revolver which the officers picked up and determined was loaded. The officers handcuffed Cheney and performed a protective sweep of Cheney's three-room storage unit, where they found in plain view a loaded shotgun and a .22-caliber rifle. Cheney then consented to a search of his unit, which uncovered a purple book bag containing 360 grams of marijuana, 0.2 grams of methamphetamine, 4.4 grams of powder cocaine, a digital scale and 22.5 grams of a substance that the officers suspected was crack cocaine.

When police inventoried Cheney's belongings at the police station, they discovered a receipt for a different storage unit at the facility. After obtaining a search warrant, officers searched the second storage unit and found six other guns as well as a box for the .38-caliber revolver seized on the night of Cheney's arrest.

A grand jury indicted Cheney for being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g), and for possessing with an intent to distribute more than five grams of cocaine, *see* 21 U.S.C. § 841(a)(1), (b)(1)(B). After the court held a suppression hearing—at which it denied Cheney's motion to suppress the evidence found in the storage units—and after tests indicated that the 22.5 grams of suspected crack cocaine did not contain a banned substance, Cheney pleaded guilty to the felon-in-possession charge.

At Cheney's sentencing hearing, the district court adopted the presentence investigation report and applied the then-mandatory sentencing guidelines in determining Cheney's sentence. Consistent with the report, the district court increased Cheney's offense level by four levels because he had possessed a firearm in connection with another felony offense. *See* U.S.S.G. § 2K2.1(b)(5). The court sentenced Cheney to 37 months in prison, which represented the low end of the guidelines sentencing range of 37 to 46 months. At the conclusion of the sentencing hearing, Cheney claimed that his sentence violated the Sixth Amendment as interpreted by *Blakely v. Washington*, 542 U.S. 296 (2004). "If this court were to sentence the defendant in the absence of the guidelines but within the statutory sentencing range," the district court responded, "the sentence would be exactly the same as [that] which I have imposed here." JA 167.

No. 04-6516
*United States v. Cheney*

II.

Cheney appeals on two grounds: (1) the district court erred in increasing his offense level by four levels under § 2K2.1(b)(5) of the guidelines, and (2) the district court violated the Sixth Amendment as interpreted by *United States v. Booker*, 543 U.S. 220 (2005), in sentencing him.

A.

If a defendant "used or possessed any firearm or ammunition in connection with another felony offense," § 2K2.1(b)(5) of the guidelines says that a sentencing court should "increase [the offense level] by 4 levels." Simultaneous but "coincidental" possession of firearms and drugs, we have held, does not suffice to establish that a defendant possessed firearms "in connection with" a drug offense. *See, e.g.*, *United States v. Hardin*, 248 F.3d 489, 495 (6th Cir. 2001). But under what has come to be known as the "fortress theory," "a sufficient connection is established" for purposes of § 2K2.1(b)(5) "if it reasonably appears that the firearms" were used "to protect the drugs." *United States v. Clay*, 346 F.3d 173, 179 (6th Cir. 2003) (internal quotation marks omitted); *see United States v. Ennenga*, 263 F.3d 499, 502 (6th Cir. 2001). "We review for clear error the district court's factual findings, and accord 'due deference' to the district court's determination that the USSG § 2K2.1(b)(5) enhancement applies." *United States v. Burke*, 345 F.3d 416, 426–27 (6th Cir. 2003); *see also Ennenga*, 263 F.3d at 502 (applying a "deferential standard of review" to the district court's application of § 2K2.1(b)(5)).

- 4 -

The district court did not err in applying § 2K2.1(b)(5) to Cheney. At a minimum, on the night of his arrest, Cheney possessed a loaded .38-caliber revolver and had a loaded shotgun in open view in his storage unit. This same storage unit also contained digital scales as well as cocaine, marijuana and methamphetamine. As this court has reasoned in published and unpublished decisions, a sentencing court has ample discretion to apply the fortress theory in this and comparable settings. *See, e.g.*, *Clay*, 346 F.3d at 179 (applying § 2K2.1(b)(5) where the defendant was "apprehended in an uninhabited apartment late at night with a bag of cocaine and a large amount of cash on his person" and the defendant "was carrying a firearm"); *Hardin*, 248 F.3d at 500 (applying § 2K2.1(b)(5) where the defendant possessed a 9-mm pistol and a large stash of cocaine in his bedroom); *United States v. Conley*, No. 03-1157, 2004 WL 500984, at *1–2 (6th Cir. Mar. 11, 2004) (applying § 2K2.1(b)(5) where the defendant possessed the firearm "in close proximity to the drugs," police "seized drug paraphernalia" from the defendant, "the firearm was . . . the type of firearm used by drug dealers," the defendant could not give a "reason for th[e] need" to possess the gun, "grand jury testimony indicated that [the defendant] was a drug dealer[,] and the firearm was loaded"); *United States v. Holt*, Nos. 03-5119, 03-5120, 2003 WL 22976639, at *1–2 (6th Cir. Dec. 8, 2003) (applying § 2K2.1(b)(5) where the defendant "stored the weapons and the marijuana in the same location" and failed to "provide any other reason for having the firearms"); *United States v. Richardson*, No. 01-6416, 2003 WL 22097854, at *3 (6th Cir. Sept. 4, 2003) (applying § 2K2.1(b)(5) where the defendant possessed the gun under his mattress next to $7,000 in drug proceeds); *United States v. Martin*, Nos. 00-6164, 00-6165, 2002 WL 147858, at *7 (6th Cir. July 9, 2002) (applying § 2K2.1(b)(5) where the "weapons were found inside and outside of the house,

as was marijuana or evidence thereof, [and] drug paraphernalia was found inside the house along with large quantities of cash").

Trying to fend off this conclusion, Cheney argues that he did not admit to these facts and that the government did not otherwise prove them at sentencing. But the presentence report, which the district court expressly adopted, contained a detailed recitation of these precise facts and an ample evidentiary basis for finding them, including Cheney's possession of the various guns and the drugs and scale contained in the storage unit. Confirming the point, Cheney's counsel (Mr. Coleman) did not object at sentencing when the court and the government referred to the guns and drugs that were listed in the report as possessed by Cheney. *See* JA 159–60 (no objection to government's recitation of items found in the storage unit: "359 grams of marijuana, only about four grams of cocaine, and then" a small amount of methamphetamine); JA 160 ("THE COURT: But they had—the drugs were in that storage unit. And we had, we got not one but two loaded weapons there."). A short time later, Cheney's counsel conceded the existence of these facts. *See* JA 161 ("MR. COLEMAN: Well, I'm not disagreeing with any of the facts . . . ."); *see also* JA 156 ("MR. COLEMAN: . . . Mr. Cheney pled guilty to possessing nine firearms having had a prior felony offense. Three of [the firearms] were the only ones that were in proximity to any narcotics . . . . [W]hat narcotics were found in the place were found in a bag . . . in a storage unit . . . . I don't believe that those facts are in dispute.").

For the first time in his reply brief, Cheney separately argues that the district court misapplied § 2K2.1(b)(5) because the court enhanced his sentence based on the possession of a

firearm in connection with felony possession of other firearms. When the district court applied the

four-level enhancement under 2K2.1(b)(5), Cheney points out, the court noted:

> I believe that the evidence that was presented here . . . makes it very clear that . . . by
> a preponderance of the evidence that the gun was, the guns were possessed in
> connection with another felony offense, that is felon in possession, a felon in
> possession charge.

JA 161 (sentencing hearing). Application note 18 to § 2K2.1(b)(5), Cheney adds, indicates that a

court normally may not enhance a felon-in-possession sentence on the ground that the defendant

committed the offense in connection with another felon-in-possession offense. U.S.S.G. Manual

§ 2K2.1(b)(5) cmt. n.18 (2003) ("As used in subsections (b)(5) and (c)(1), 'another felony offense'

and 'another offense' refer to offenses other than explosives or firearms possession or trafficking

offenses.").

Cheney, however, did not raise this argument in his opening appellate brief, and accordingly

it is waived. *United States v. Moore*, 376 F.3d 570, 576 (6th Cir. 2004). The argument, at any rate,

is flawed. Read in context, the sentencing-hearing transcript reveals that the court understood that

the proposed enhancement turned on Cheney's simultaneous possession of drugs and firearms. *See*

JA 159 (responding to government's assertion that "the proof is that [Cheney] had those guns to

protect . . . the drugs that he had": "The drugs were found in that storage unit? . . . [T]he quantity

of drugs was what?"); JA 160 ("[H]ere's the situation as I see it. . . . The officer heard what sounded

to him like a pistol hit the ground. . . . And sure enough . . . Mr. Cheney was standing there, and

there was a .38 there."); *Id.* ("But they had—the drugs were in that storage unit. And he had, we got not one but two loaded weapons there."); JA 161 ("He had drugs in there.").

The parties' positions at sentencing reinforce that conclusion. During the hearing, both sides focused on supporting or defeating the enhancement based on a felon-in-possession charge in connection with drug distribution. *See* JA 155–56 (Cheney's counsel) (noting at the hearing's outset that although he filed some "narrative corrections" to the presentence report, the only objection he had to the report was that the guns were not possessed, in his view, "in connection with" the drugs); JA 158 (government counsel) (stating that "[o]ur position, Your Honor, is that the guns were in connection with this other felony offense of possession of drugs with intent to resale").

While we have some sympathy for Cheney's position that the judge's concluding remark is confusing, it does not compel the interpretation that Cheney gives to it. Having said nothing up to that point about enhancing Cheney's sentence based on his offense's connection to a felon-in-possession charge, having heard nothing from the parties up to that point about such an enhancement and having adopted, in the same hearing, a presentence report based on felon in possession in connection with drug distribution, the judge's remark must be read in context as meaning something else. More plausibly, his oral remark simply reveals an incomplete idea that simply reiterates that the underlying felony was a felon-in-possession charge, as shown by the following bracketed alteration:

> I believe that the evidence that was presented here . . . makes it very clear that . . . by a preponderance of the evidence that the gun was, the guns were possessed in

> connection with another felony [offense. That] is felon in possession, a felon in possession charge.

JA 161 (altered from original). Bolstering this interpretation, Cheney's counsel did not object to the remark when it was made and did not even mention it to this court in his opening brief on appeal.

Cheney also argues that the district court violated Rule 32 of the Federal Rules of Criminal Procedure by failing to make specific fact findings or to rule on his objections to the presentence investigation report. *See* Fed. R. Crim. P. 32(i)(3). But as noted above, the district court did make such a finding by expressly adopting the presentence investigation report and the factual findings contained in it. What is more, at the beginning of the sentencing hearing, Cheney's attorney acknowledged that his only objection to the report was its legal conclusion that Cheney possessed the firearms "in connection with" felony drug possession, an argument that the court addressed by explaining that the "fortress theory" applies in this setting.

Cheney next argues that *Bailey v. United States*, 516 U.S. 137 (1995), and *United States v. Wade*, 318 F.3d 698 (6th Cir. 2003), prohibit us from using the fortress theory. Both cases, however, involved 18 U.S.C. § 924(c), which distinctly criminalizes the "use" of a firearm "in furtherance of" a drug crime. Since both decisions, we have distinguished "possession" from "use" and "in connection with" from "in furtherance of" in continuing to apply the fortress theory to § 2K2.1 enhancements. *See, e.g.*, *United States v. Covert*, 117 F.3d 940, 947–48 (6th Cir. 1997) (holding that courts may still give § 2K2.1(b)(5) enhancements under the fortress theory after

*Bailey*); *Clay*, 346 F.3d at 179 (giving a § 2K2.1(b)(5) enhancement under the fortress theory after *Wade*).

## B.

Cheney, lastly, argues that his sentence violates *Booker*. Although the district court applied the then-mandatory guidelines in sentencing Cheney, it gave an identical, alternative sentence in view of the concern that the Supreme Court might invalidate the guidelines. "[W]hen a district court imposes alternative, identical sentences, one under a regime in which Guidelines enhancements are not mandatory, the harmlessness of any *Booker* error is established." *Christopher*, 415 F.3d at 593. Because the district court imposed such an alternative sentence and because Cheney has not shown that this alternative sentence was unreasonable, we need not remand this case for resentencing. *See Christopher*, 415 F.3d at 594 (noting that a district court's failure to mention the § 3553(a) factors does not establish reversible error when the defendant fails to offer "any explanation on appeal as to what factors listed in § 3553(a) the district court should have considered, or how these factors would have made a difference in the sentence he received").

## III.

For these reasons, we affirm.