RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0155p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

COACH, INC. and COACH SERVICES, INC.,
                     *Plaintiffs-Appellees*,


     *v.*

FREDERICK GOODFELLOW, dba The
Southwest Flea Market, aka 3rd Street Flea
Market,

                *Defendant-Appellant.*

No. 12-5666

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:10-cv-2410—Diane K. Vescovo, Magistrate Judge.

Argued: April 30, 2013

Decided and Filed: May 31, 2013

Before: NORRIS, COOK and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Stephen R. Leffler, Memphis, Tennessee, for Appellant. J. Britt Phillips, SUTTER O'CONNELL CO., Franklin, Tennessee, for Appellees. **ON BRIEF:** Stephen R. Leffler, Memphis, Tennessee, for Appellant. J. Britt Phillips, SUTTER O'CONNELL CO., Franklin, Tennessee, Matthew C. O'Connell, SUTTER O'CONNELL CO., Cleveland, Ohio, for Appellees.

_____

## OPINION

_____

McKEAGUE, Circuit Judge. This case presents a question the Sixth Circuit has not directly addressed: Can a flea market operator be held contributorily liable for trademark infringement by vendors? Plaintiffs brought suit under the Lanham Act, alleging a Memphis flea market operator is liable for sales of counterfeit products at his

1

flea market. The district court granted plaintiffs' motion for summary judgment on liability, entered judgment on the jury's damages verdict of $5,040,000, and awarded attorney's fees and costs to plaintiffs in the amount of $186,666.61. Defendant argues on appeal that the Lanham Act does not provide for contributory liability for trademark infringement by third persons and that this is not an "exceptional case" warranting attorney's fees. Because we find the district court neither erred as a matter of law nor abused its discretion, we affirm.

## I. BACKGROUND

Plaintiffs Coach, Inc. and Coach Services, Inc. (hereinafter "Coach") are in the business of designing, marketing, and selling products such as handbags, briefcases, leather goods, eyewear, and footwear. Coach owns an extensive portfolio of trademarks. Defendant Frederick Goodfellow, d/b/a The Southwest Flea Market ("Goodfellow"), at all times relevant owned and operated a flea market as a sole proprietorship in Memphis. Goodfellow controlled, managed, and oversaw the day-to-day operations of the flea market. The flea market rented seventy-five to one hundred booths to vendors at the rate of $15 per day Thursday through Sunday each week. The flea market also rented storage containers to vendors for storage of their goods. The flea market was managed by Director of Operations Karl Johnson, an employee of Goodfellow. Although Johnson managed the flea market's day-to-day business, Goodfellow controlled the flea market and had ultimate authority in allowing and removing vendors who sold goods at the flea market.

On January 15, 2010, Coach sent a letter to Goodfellow, notifying him of counterfeit sales of Coach products at the flea market, advising him of the potential violation of both federal and state laws, and demanding that all sales of counterfeit Coach products cease. On March 26, 2010, Goodfellow received another letter, this time from the Shelby County Office of the District Attorney General. The letter notified Goodfellow that counterfeit sales of Coach items were continuing at the flea market. The letter also stated that Goodfellow was in willful disregard of the law. On April 23,

2010, law enforcement officers raided the flea market and seized counterfeit Coach products.

In June 2010, Coach filed this action against Goodfellow and the flea market demanding the sale of counterfeit Coach products be stopped. After a Coach investigator discovered continuing sales of counterfeit Coach products in February 2011, law enforcement officers conducted another raid on March 4, 2011. Yet another raid was conducted on June 23, 2011, this time involving approximately 150 local, state and federal officers and various Coach investigators. More than 4,600 counterfeit Coach products were seized and the flea market was permanently shut down.

Goodfellow admitted knowing that vendors continued to sell counterfeit Coach products at the flea market between the time he received the first letter from Coach in January 2010 and the time he received the letter from the District Attorney in March 2010. Goodfellow also admitted that he was aware of the multiple raids, and he knew that arrests were made during these raids. The flea market's employees never received any training to identify counterfeit goods. Johnson did not remember any vendors having been expelled or rejected for selling counterfeit products. Neither Goodfellow nor Johnson inspected vendors' goods or questioned them as to whether their goods were counterfeit or authentic. The flea market did not have a license to sell Coach products and neither Goodfellow nor Johnson asked vendors if they had licenses. Nor were vendors required to sign a statement agreeing, as a condition of renting a booth, that they would not sell counterfeit products.

There was some evidence of remedial measures. Goodfellow distributed pamphlets to vendors, posted copies of a "counterfeit is prohibit" sign, and called a meeting with vendors to address the selling of counterfeit goods. However, the pamphlets were distributed randomly and incompletely; the signs that were posted were actually intended to address a growing problem with counterfeit currency, not counterfeit products; attendance at the meeting with vendors, scheduled on a day when the flea market was not open for business, was voluntary and attended only by some vendors;

and communication was frustrated by language differences, as many of the vendors were from West Africa.

In the complaint, Coach alleged that Goodfellow was liable for the sale of counterfeit products and infringement of Coach's trademarks, in violation of the Lanham Act, 15 U.S.C. § 1114. The parties consented to have the case decided by United States Magistrate Judge Diane K. Vescovo pursuant to 28 U.S.C. § 636(c). Coach filed a motion for partial summary judgment on the issue of liability on October 11, 2011. Goodfellow failed to respond to Coach's motion. On February 21, 2012, the district court, without conducting a hearing, granted partial summary judgment to Coach on the issue of contributory liability. Despite Goodfellow's failure to respond, the court viewed the record in the light most favorable to him as non-movant, but still held that Goodfellow was contributorially liable for sales of counterfeit Coach products by his vendors.

On March 1, 2012, Goodfellow moved to set aside the order granting partial summary judgment. Goodfellow asked for relief from judgment because notice of the motion for partial summary judgment had been misplaced by his attorney and because Coach's counsel had filed notice of intent to strike the motion for partial summary judgment on January 20, 2012. While setting forth these grounds for his failure to timely respond, Goodfellow's motion offered no argument on the merits. The district court denied Goodfellow's motion, finding that his showing of attorney error did not amount to excusable neglect, as required by Fed. R. Civ. P. 60(b)(1). The court also noted that even if the neglect were deemed excusable, Goodfellow did not assert a meritorious defense in his motion to justify setting aside the order.

Goodfellow's liability having thus been established, the district court conducted a jury trial to determine Coach's damages. On March 20, 2012, Coach was awarded $5,040,000 in damages. The jury found that Goodfellow willfully infringed Coach's trademarks. The jury awarded $240,000 per mark for twenty-one total infringed marks. The district court entered judgment on the verdict and granted Coach permanent injunctive relief on April 2, 2012. In granting Coach's ensuing motion for attorney's

fees, awarding Coach $186,666.61 in fees and costs, the district court noted that the Lanham Act, 15 U.S.C. § 1117(a), allows for award of attorney's fees to the prevailing party in exceptional cases. The court determined the case was exceptional because Goodfellow failed to litigate the liability issue at all and because the jury found his infringement to be willful.

## II.  ANALYSIS

### A.  Secondary Liability for Trademark Infringement

Goodfellow appears to frame the claim of error on appeal as a question of law, contending the Lanham Act does not provide for contributory liability for trademark infringement by third persons. In substance, however, his claim is in the nature of a challenge to the sufficiency of the evidence to support liability in this case. Yet, Goodfellow's liability was established in a summary judgment ruling the merits of which he never challenged below. By failing to present evidence creating a genuine issue of material fact and failing to otherwise contest Coach's motion below, he has effectively forfeited his right to appeal the liability ruling.

Ordinarily, we will not address issues raised for the first time on appeal. *McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir. 2002). This is a prudential rule that promotes judicial economy. Its application is left to the discretion of the court. *Id.* We may elect not to enforce the rule where the appellate issue is developed with sufficient clarity and completeness, in "exceptional cases," to avoid "a plain miscarriage of justice," or for some "over-arching purpose beyond that of arriving at the correct result in an individual case." *Foster v. Barilow*, 6 F.3d 405, 407-08 (6th Cir. 1993). Although Goodfellow's counsel's failure to defend may have handicapped full development of the record below, the factual record on which the district court's ruling was based is clear and the parties' appellate briefing of the legal issue is adequate. Inasmuch as adjudication by default is disfavored and this case affords opportunity to provide guidance on contributory trademark infringement, we take up the merits of the district court's ruling notwithstanding Goodfellow's default below.

We review the partial summary judgment ruling on contributory liability *de novo* based on the record as it existed at the time of the ruling. *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 995 (6th Cir. 2007). The Lanham Act protects registered copyrights, trademarks, and patents. In relevant part, the Lanham Act addresses trademark counterfeiting and infringement as follows:

> Any person who shall, without the consent of the registrant … use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive … shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a). A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 515 (6th Cir. 2007) (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)). There is no dispute in this case as to whether infringement occurred. The legal question presented is whether Goodfellow is properly held liable for the infringing acts of others.

Goodfellow contends the district erred by holding him liable for trademark infringement because there was no showing that he and the infringing vendors were in a partnership relationship or had authority to bind one another or exercised joint ownership or control. On this point Goodfellow is right: the record does not show that he and the vendors were in such a relationship as would justify recognition of *vicarious* liability for infringement. *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 165 (4th Cir. 2012); *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992) (defining requirements of vicarious liability). Vicarious liability is a species of secondary liability, but not the one applied here by the district court.

Rather, the district court held Goodfellow was subject to *contributory* liability for vendors' trademark infringements.

This form of secondary liability was first recognized by the Supreme Court in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982). The Court determined that liability under the Lanham Act may be imposed on those who facilitate trademark infringement, stating that where a "distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, [it] is contributorially responsible for any harm done as a result of the deceit." *Id.* at 854. Although the Lanham Act refers only to direct trademark infringers, *Inwood* established that liability may also be imposed on those who facilitate the infringement.

The teaching of *Inwood* has been applied to flea market operators, rendering them subject to liability for trademark infringement by vendors. In *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143 (7th Cir. 1992), the Seventh Circuit held that a flea market operator can be liable for trademark violations by its vendors if it knew or had reason to know of them. *Id.* at 1149. Although there was no proof that the flea market operator in *Hard Rock Cafe* had actual knowledge that its vendors were selling counterfeit products, the court held that knowledge could be established and contributory liability could be imposed if the flea market operator was shown to be "willfully blind" to ongoing violations. *Id.* The court defined as willfully blind one who suspects wrongdoing and deliberately fails to investigate. *Id.* Thus, per *Hard Rock Cafe*, a flea market operator who deliberately fails to investigate suspected infringing activity by vendors and facilitates ongoing infringement by permitting such vendors to use flea market resources may be subject to contributory liability.

Similarly, in *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), a flea market operator knew that its vendors were selling counterfeit music recordings both before and after law enforcement officers raided the flea market and seized counterfeit recordings. *Id.* at 261. The Ninth Circuit adopted *Hard Rock Cafe*'s application of *Inwood*, holding that the flea market operator was liable for contributory

trademark infringement because it knew or had reason to know of the infringing activity. *Id.* at 264-65 (observing that a flea market operator "can not disregard its vendors' blatant trademark infringements with impunity"). Other circuits have also applied this reasoning to internet marketplaces, concluding that the marketplace may be liable for contributory trademark infringement if it knew or had reason to know identified vendors were engaging in infringing activity. *See Rosetta Stone*, 676 F.3d at 163-65; *Tiffany (NJ), Inc. v. eBay, Inc.*, 600 F.3d 93,105-10 (2d Cir. 2010).

Here, Goodfellow, provider of a product or service, i.e., rental booths and storage units for vendors, continued to supply these resources to vendors who he knew or had reason to know were engaging in trademark infringement. Goodfellow's actual knowledge of the counterfeit sales is established by several items. He received a letter from Coach on January 15, 2010, which he signed, advising that counterfeit Coach products were being sold at Goodfellow's flea market. Goodfellow also received a second letter, this time from the district attorney, dated March 26, 2010, again stating that counterfeit Coach products were being sold at his flea market and advising Goodfellow that he was willfully violating state and federal law. Goodfellow received notice of the lawsuit filed by Coach on June 6, 2010, informing him of his potential liability for the counterfeit Coach products. Moreover, law enforcement officers raided the flea market on April 23, 2010, March 4, 2011, and June 23, 2011. Some of the raids were conducted after Coach filed this lawsuit against Goodfellow. Because Goodfellow continued to rent spaces at his flea market to vendors that he knew, or should have known, were engaging in infringing activity, and because these facts are sufficient to support a finding of contributory liability under *Inwood* as applied in other circuits, we find no error in the district court's ruling.

Goodfellow does not dispute that he was on notice of infringing activity, but maintains he responded reasonably. He contends that his remedial measures were analogous to those taken by the defendant in *Tiffany*, where the Second Circuit affirmed judgment in favor of the defendant, eBay. The *Tiffany* court found that eBay was not liable for trademark infringement for counterfeit merchandise sold on eBay's website

because eBay promptly removed all listings that Tiffany challenged as counterfeit and spent millions of dollars taking affirmative steps toward the removal and monitoring of counterfeit Tiffany merchandise. *Tiffany*, 600 F.3d at 103. These remedial steps went well beyond those taken by Goodfellow. Additionally, the court in *Tiffany* found that eBay was not liable for contributory trademark infringement because eBay only had general knowledge of counterfeit sales through its website, holding that contemporary knowledge of particular listings would have been necessary to support contributory liability. *Id.* at 107-08. The present facts are distinguishable from those presented in *Tiffany* in that Goodfellow had actual knowledge that the infringing activity was occurring at his flea market over a lengthy period of time and even knew that particular vendors were selling counterfeit Coach products. Yet, throughout this sustained period of time, Goodfellow failed to deny access to offending vendors or take other reasonable measures to prevent use of flea market resources for unlawful purposes, and failed even to undertake a reasonable investigation.

Furthermore, some evidence of Goodfellow's remedial measures was presented only in the jury trial on damages, not in opposition to the motion for partial summary judgment. Because Goodfellow is bound by the record developed at the time of the summary judgment ruling, evidence of remedial measures presented in the damages trial is not properly considered on appeal. Yet, even if the full factual record were considered, Goodfellow's efforts do not compare with those taken by eBay in *Tiffany*. *See also Coach, Inc. v. Gata Corp.*, 2011 WL 2358671 (D.N.H. June 9, 2011) (distinguishing *Tiffany*, awarding summary judgment to Coach, and imposing contributory liability on defendant flea market operator under facts nearly identical to those presented here).

Although Goodfellow attempted to notify vendors that selling counterfeit goods was prohibited through the distribution of pamphlets and by holding a voluntary meeting with some vendors, he admitted knowing that vendors continued to sell products that Coach charged were counterfeit both before and after Coach filed this lawsuit. Goodfellow claims he thought the Coach products offered for sale in plain sight were

authentic. Yet, he admitted that the flea market did not have a license to sell Coach products and he never inquired whether the vendors' goods were licensed or authentic despite receiving actual notice of sales of counterfeit products. Additionally, Goodfellow rented spaces at his flea market to vendors he knew, or should have known, were engaging in infringing activity.

In the trial on damages, Goodfellow did testify, contradicting Johnson's earlier testimony, that he had personally asked as many as sixteen vendors to leave during a one-year period. Considering the overall breadth and duration of the infringing activities, however, this effort, if believed, is hardly compelling evidence of a reasonable response by Goodfellow. Indeed, the jury nonetheless found by a preponderance of the evidence that Goodfellow's facilitation of the infringement was "willful." That is, per instructions that Goodfellow has not challenged, the jury found that he knew of Coach's marks; that he knew or was deliberately indifferent to the fact that his conduct would contribute to infringement of the marks; and that he intentionally allowed the sale of infringing products or acted in conscious disregard for Coach's rights. Goodfellow has not challenged the sufficiency of the evidence to support the jury's verdict.

Thus, even if we consider all the evidence of remedial measures, it fails to undermine the district court's conclusion that Goodfellow engaged in "ostrich-like practices." Goodfellow continued to supply flea market resources to vendors with knowledge of and willful blindness toward ongoing infringing activities, thereby facilitating continued infringing activity. The facts are sufficient to support a finding of contributory liability under the prevailing standards established by the Supreme Court as applied in other circuits, authorities which we find persuasive. We therefore hold that Goodfellow is properly held liable for contributory trademark infringement because he knew or had reason to know of the infringing activities and yet continued to facilitate those activities by providing space and storage units to vendors without undertaking a reasonable investigation or taking other appropriate remedial measures.

**B. Attorney's Fees**

The district court awarded attorney's fees and costs to Coach in the amount of $186,666.61. The court noted that the Lanham Act allows award of attorney's fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). Although this provision does not define "exceptional," we have held that "a case is not exceptional where the trademark infringement was not malicious, willful, fraudulent, or deliberate." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1192 (6th Cir. 1997). We review an award of attorney's fees and costs for abuse of discretion. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). An abuse of discretion is established where the reviewing court is left with a definite and firm conviction that the district court committed a clear error of judgment. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003).

Goodfellow insists this is not an exceptional case. He does not specifically challenge the amount of the award, but contends that no award is warranted. He maintains he acted in good faith and that the law under which he is held liable was not clearly established at the time of the infringing activities.

The district court held this case was exceptional because Goodfellow knew or had reason to know that his vendors were engaging in infringing activity, he failed to litigate the issue of liability, and the jury found his conduct willful. Although the applicability of contributory liability had not been established by Sixth Circuit precedent, Supreme Court authority established well before Goodfellow started operating his flea market that a third party could be liable for contributory trademark infringement if it "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *See Inwood*, 456 U.S. at 854. Goodfellow had actual notice of ongoing infringing activity. Despite such knowledge, Goodfellow continued to facilitate the infringing activity by providing space and facilities at his flea market to infringing vendors. The district court was well within its discretion in finding that Goodfellow's intentional, deliberate, or willful ignorance of actual notice of infringing activity made out an "exceptional case," permitting award of

attorney's fees to the prevailing party under the Lanham Act.  Because the district court did not commit clear error or abuse its discretion in awarding attorney's fees and costs to Coach, we uphold the award.

### III.  CONCLUSION

Goodfellow continued to rent space and facilities at his flea market to vendors he knew or should have known were engaging in infringing activity.  The district court did not err in ruling that Goodfellow was contributorially liable for vendors' infringements.  Nor did the district court abuse its discretion in holding that Goodfellow's actions were willful, constituting an exceptional case warranting an award of attorney's fees to Coach.  Accordingly, the judgment of the district court is **AFFIRMED**.