**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0062n.06

Case No. 18-3837

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Jan 29, 2020 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| DONALD SIMS, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: SILER, STRANCH, and NALBANDIAN, Circuit Judges.

SILER, J., delivered the opinion of the court in which NALBANDIAN, J., joined. STRANCH, J. (pp. 8–16), delivered a separate dissenting opinion.

SILER, Circuit Judge. In 2016, Donald Sims—a convicted felon—sold a firearm and ammunition to a confidential informant ("CI") in violation of 18 U.S.C. § 922(g)(1), his second felony possession offense. Sims was arrested and indicted for the offense, and pleaded guilty without a plea agreement. The district court at sentencing emphasized Sims's prior 34-month sentence for his first felony possession conviction, and the additional 10-month sentence he served for violating his supervised release in the prior case. The district court then varied upward from the Sentencing Guidelines' recommended 27- to 33-month sentence and imposed a sentence of 48 months' imprisonment. Sims now appeals the substantive reasonableness of his sentence. We AFFIRM.

I.

In 2010, Sims was convicted of being a felon in possession of ammunition and sentenced to 34 months' imprisonment followed by a three-year term of supervised release. While serving his term of supervised release, he twice tested positive for marijuana use, failed to submit a report to his probation officer, and absconded from supervision. In 2014, the district court revoked Sims's supervised release and imposed a 10-month sentence of imprisonment for his violations.

Then, in 2016, Sims sold a firearm and ammunition to a CI and was subsequently indicted for unlawful possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1). He later pleaded guilty to the charge without a plea agreement.

At his sentencing hearing, the district court applied a base offense level of 14, and gave a 2-level reduction for acceptance of responsibility for a total offense level of 12. Based on Sims's criminal history category of V, the resulting Sentencing Guidelines range was 27-33 months.

Defense counsel, arguing for a below or low-end Guideline sentence, noted Sims's "difficult childhood." Defense counsel also noted that in the two-year period between his offense and arrest, Sims had married and was helping raise his wife's grandchild, was actively involved with his own children, and had lived in the community without incident. The defense submitted eleven letters of support substantiating the changes he had made. Sims's landlord, also his employer, submitted a letter indicating Sims was "a very hard worker" with "excellent attendance" and "very impressive work skills," and that he intended to re-hire Sims when he was released. Defense counsel pointed out that Sims had "maintained employment" and had taken a substance abuse class to address his prior marijuana use. While acknowledging the court's concern over Sims's criminal record, defense counsel also noted that Sims had committed only traffic offenses since the time of the instant offense, had readily admitted his conduct when confronted by law

enforcement prior to his indictment, and contended that his prior convictions included minor misdemeanors for marijuana possession and disorderly conduct.

The district court emphasized Sims's prior 34-month sentence for his first felon-in-possession conviction, and his further 10-month sentence for violating his supervised release in that case. The court explained that it was considering varying above the Guidelines range because Sims was "not a defendant who [didn't] know that [he was] facing a federal prosecution for possessing a gun and ammunition" but rather he went "out and [did] it again," despite knowing "what the consequences would be here in federal court." Accordingly, since his prior term of imprisonment had failed to "send [Sims] a message," the court found it necessary to "remove him from society so that he understands he cannot go out and get guns and then put them in the hands of other people, many times people that can't have them." The court noted that Sims's positive interactions in the community in the two-year gap between his offense and arrest were factors that would "count as I decide how much the upward variance will be because I don't think the guidelines are sufficient for individuals who spent 34 months on one gun case and another ten on a violation." It further noted that Sims's juvenile record included "another firearm offense . . . which is serious, as well."

For his part, Sims admitted that his decision to cease his marijuana use occurred during his incarceration, and that he had been using marijuana when he was arrested in March 2018. Sims stated that he took "full responsibility for my offense conduct."

In discussing the applicable § 3553(a) factors, the court stated that it had "carefully considered the matter," including "review[ing] the sentencing memorandum submitted by the defendant, the letters that were submitted in support and the certificates" in deciding "an appropriate sentence in the matter." It noted Sims's continued contact with his three minor

children, and that he planned to live "with his wife and two grandchildren . . . upon his release from custody in this case." As to the offense conduct, the court noted that Sims "did not just sell the gun, but he also sold the ammunition to . . . make certain the firearm could be utilized." It noted Sims's juvenile record and "14 adult convictions ranging from no operator's license to burglary." The court acknowledged Sims's difficult upbringing and prior substance abuse, including "test[ing] positive for drugs at the time of his appearance through pretrial services" and Sims's belief that "he could benefit from substance abuse counseling."

The court also acknowledged that although an upward variance might result in "some disparity between defendants with similar records and similar past[s]," it believed that a Guidelines sentence would be "insufficient . . . because of the defendant's prior record and history." The court explained that Sims had "been involved with the law since the age of 16" and despite being incarcerated and placed on probation previously, none of his past "sanctions ha[d] deterred him from being involved with guns," including his "prior felon in possession conviction in our district" that resulted in a 34-month sentence, violation of his supervised release, and additional 10-month sentence. Despite these prior convictions, the court noted that Sims "continue[d] to possess firearms knowing he's unable to do so," thus posing "a risk to the community by possessing and selling firearms." It concluded that since Sims's prior 34- and 10-month sentences were insufficient "to get the defendant's attention, to understand he can't have a gun, then the 27- to 33-month range isn't sufficient." The court indicated that it had planned to vary upward to a 60-month sentence, representing half the applicable statutory maximum penalty, but had instead decided to apply a less substantial upward variance, and imposed a 48-month sentence, based on the defense's mitigating arguments.

Defense counsel objected to the upward variance as unwarranted, arguing that the court had placed too much weight on the defendant's record, as opposed to the sentencing factors raised by the defense. The court again explained its sentence, and emphasized its prior intention to impose a 60-month sentence, before the defense's mitigating arguments, "reread[ing] your briefing," and considering that Sims had "readily admitted his conduct." Sims now appeals the substantive reasonableness of his above-Guidelines sentence.

## II.

We review a district court's sentencing decision "under a deferential abuse-of-discretion standard" and "take into account the totality of the circumstances" in determining a sentence's substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 41, 51 (2007).[1] "An abuse of discretion is established where the reviewing court is left with a definite and firm conviction that the district court committed a clear error of judgment." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013).

"A sentence will be found to be substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors[,] or gives an unreasonable amount of weight to any pertinent factor." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (internal quotation marks and citation omitted). "The essence of a substantive-reasonableness claim is whether the length of the sentence is greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632-33 (6th Cir. 2010) (internal quotation marks omitted). On review, we "may consider the extent of the deviation, but must give due deference to the district

---

[1] Given that Sims does not challenge the procedural reasonableness of his sentence, we need only review for substantive reasonableness. *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008).

court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51; *see United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009) (noting that the court "give[s] due deference to the district court's application of the guideline to the facts." (internal quotation marks and citation omitted)).

Sims argues that at sentencing, the district court "did not explain how the facts and circumstances of Sims's offense and his personal and criminal history removed this case from the 'heartland' of felon-in-possession cases," and "gave an unreasonable amount of weight to Sims's prior felon-in-possession conviction, and too little weight to the evidence showing that he poses neither a danger to the community, nor a serious recidivism risk." Sims further contends that caselaw demonstrates that above-Guidelines sentences in felon-in-possession cases are reserved for defendants whose offenses and/or criminal histories stand out for their violence and brazenness.

Sims's argument ignores, however, that provided the district court has examined all the § 3553(a) factors, it may place greater weight on a particular factor if such weight is warranted under the facts of the case. *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013). Unlike our recent decision in *United States v. Warren*—in which we reversed as substantively unreasonable a sentence that "roughly *doubl[ed]*" the recommended sentence where the variance was based solely on the defendant's criminal record, which is already accounted for in a defendant's criminal history category, 771 F. App'x 637, 641-43 (6th Cir. 2019) (emphasis in original)—the district court here provided several reasons supporting its decision to vary upward by roughly one-half, even discussing the defense's mitigating arguments that had persuaded the court not to impose a *greater* variance. The court further explained its heightened concern given that Sims had not only

possessed a firearm as a prior felon, but had in fact sold the gun *and ammunition* to another person, making his new offense "worse." The court thus adequately explained why the nature and circumstances of Sims's case fell outside the "heartland" of felon-in-possession cases, and noted that the Guidelines do not account for an "individual[] who spent 34 months on one gun case and another ten on a violation," necessitating the upward variance, despite the potential disparity with other sentences.

Because the district court considered all pertinent factors in this case, Sims faces a "much greater burden in arguing that the court has given an unreasonable amount of weight to any particular one." *United States v. Zobel*, 696 F.3d 558, 571 (6th Cir. 2012) (internal quotation marks and citation omitted). Sims has failed to meet his significant burden to instill in us "a definite and firm conviction that the district court committed a clear error of judgment." *Goodfellow*, 717 F.3d at 505. His argument ultimately asks this court to reweigh the § 3553(a) factors differently than did the district court, and is therefore "simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *United States v. Ely*, 468 F.3d 299, 404 (6th Cir. 2006).

AFFIRMED.

JANE B. STRANCH, Circuit Judge, dissenting. Donald Sims pled guilty to one count of unlawful possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1) for selling a pistol and magazine to a confidential informant for $300. With a category V criminal history taken into account, his Guidelines range was 27-33 months. The district court varied upward 45% from the top of that range to a four-year sentence, having concluded that prior sanctions failed "to send a message" and that Sims "has no regard for following the rules." Sims explained that he got the firearm for a friend who said he had been robbed and needed to be able to defend himself. He also noted that he lived a law-abiding life, save a few vehicular infractions, for the two years between the gun sale at issue and his arrest. In this same two-year period, he got married, held a job, and became involved in the lives of his children. Sims's life in the leadup to his arrest (he was 37-years old at the time of sentencing) stands in stark contrast to the abuse and mental health issues that he suffered during his childhood and adolescent life. Sims has had no history of violence as an adult and plans to return to his wife and step-grandchildren upon release from custody.

Knowing the facts is necessary, but merely the beginning in applying the law to determine whether a sentence is substantively reasonable. For more than a decade, we and our sister circuits have struggled to implement the Supreme Court's instruction in *Gall v. United States* to "consider the substantive reasonableness of the sentence imposed." 552 U.S. 38, 51 (2007). We have sometimes allowed a finding of procedural reasonableness to indicate satisfaction of substantive reasonableness. But *Gall* requires a separate assessment of whether an otherwise procedurally reasonable sentence is greater than necessary in light of the defendant's unique circumstances and sentences given to similarly-situated defendants. 552 U.S. at 49–51, 54–56. More recently, we have begun to address that problem, recognizing the distinct jobs of procedural reasonableness and

explaining that substantive reasonableness review also includes an assessment of whether "the court placed too much weight on some of the § 3553(a) factors and too little on others." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)).

That does not mean, of course, that a sentence is substantively unreasonable merely because we would have balanced the § 3553(a) factors differently. Nor does it mean that if the district court considered and weighed all pertinent factors, it did not give an unreasonable amount of weight to any particular one. Though appealing at first glance, this premise is problematic because it comes dangerously close to saying that a procedurally reasonable sentence (one that "consider[s] the § 3553(a) factors," *Gall*, 552 U.S. at 51) is presumed to be substantively reasonable (does not "place[] too much weight on some of the § 3553(a) factors and too little on others," *Parrish*, 915 F.3d at 1047 (citation omitted)). That presumption is found nowhere in *Gall*. If the court inappropriately weighs the § 3553(a) factors, "the sentence is substantively unreasonable regardless of whether the court checked every procedural box before imposing sentence." *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019) (quoting *Parrish*, 915 F.3d at 1047). Comparably, despite procedural propriety, a sentence would be substantively unreasonable if it results from a district court's failure to adequately consider a defendant's life history and unique characteristics, the kinds of sentences available, and the "need to avoid unwarranted sentence disparities." § 3553(a).

One way to determine whether the length of the sentence was "greater than necessary" (§ 3553(a)) to achieve the goals of sentencing is found in *Kimbrough*, decided the same day as *Gall*. *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). Because the Sentencing Commission exercised its expertise in selecting the sentencing range for the crimes covered by a particular

guideline, we have explained that "a sentence that departs from the advisory range in a 'mine-run case' warrants 'closer review.'" *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009) (quoting *Kimbrough*, 552 U.S. at 109). To be clear, "closer review" cannot mean de novo. The Guidelines are not mandatory, and we review both within- and outside-Guidelines sentences for abuse of discretion. *See Gall*, 552 U.S. at 51. But if the sentencing court deems a sentence outside the Guidelines appropriate in an otherwise unexceptional case, we look closer to "ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 50. As applicable to any substantive reasonableness review, potential justifications could include, for example, a policy-based disagreement with the Guidelines, *see Kimbrough*, 552 U.S. at 110–11, the Government's concession that a below-Guidelines sentence is in order, a Rule 11(c)(1)(C) plea agreement specifying a sentence, etc. Whatever the justification may be, the sentencing court must clearly articulate it, and we must agree, on "closer review," that it is compelling.

Applying that framework to this case, I would first ask whether this variance was imposed in a mine-run case. *See Herrera-Zuniga*, 571 F.3d at 582. A mine-run case is not a theoretical, minimally culpable offense. It is a *normal* offense under that guideline, with those sentencing enhancements and that criminal history category. Thus, in *Rita v. United States*, the Supreme Court summarized the crimes at issue, the offense level, and the criminal history category before asking whether the defendant's "circumstances are special." 551 U.S. 338, 359–60 (2007).

The primary concern of the district court was that Sims committed the same crime twice. But of course, recidivism is at the heart of his offense. Sims faced criminal penalties for firearm possession precisely because he had previously been convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). And though the district court was concerned that Sims had already "served custody time," it is impossible to be placed in

category V without serving custodial sentences. *See* USSG § 4A1.1. The mere existence of prior convictions thus does not remove Sims's case from the heartland. *See United States v. Warren*, 771 F. App'x 637, 642 (6th Cir. 2019) ("[B]ecause the Guidelines already account for a defendant's criminal history, imposing an extreme variance based on that same criminal history is inconsistent with 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' under 18 U.S.C. § 3553(a)(6)."); *United States v. Kirchhof*, 505 F.3d 409, 415 (6th Cir. 2007) (reversing a variance in part because the defendant's "lack of prior criminal history was already taken into account in calculating his guidelines range").

At issue is whether Sims's recidivism was somehow unusual or unaccounted for in the Guidelines. *See, e.g.*, *United States v. Williams*, 664 F. App'x 517, 519 (6th Cir. 2016) (noting that the crimes were increasing in severity); *Herrera-Zuniga*, 571 F.3d at 589 (finding the assessed tier underrepresented the severity of past crimes). More specifically, given the district court's stated concerns, is it unusual for a defendant in category V not only to recidivate, but to commit the same firearm offense twice? The court failed to consider this question. We should. The answer is no. Among federal offenders, those convicted of firearms offenses are the most likely to recidivate, with 68.3% being rearrested within eight years of release.[1] And among state prisoners, not only do 83.4% reoffend within nine years of release, but 58.2% commit the same type of

---

[1] *See* U.S. Sentencing Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview* 20 (Mar. 2016), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

offense again.[2] These statistics represent the mine-run case. A characteristic shared by 60% to 70% of offenders cannot remove Sims's case from the heartland.

Second, Sims tested positive for marijuana while on probation. The legal landscape regarding marijuana has changed.[3] Indeed, under federal law, a single positive drug test does not even justify revoking supervised release. 18 U.S.C. § 3583(g)(4). And although the sentencing transcript reveals that the district court was troubled by Sims's continued marijuana usage, it did not consider whether positive marijuana tests are uncommon among mine-run defendants.

Finally, Sims sold a gun and magazine. The ammunition argument is a red herring. A cursory review of our caselaw demonstrates that guns involved in firearms charges are very frequently loaded—or worse, fired.[4] As for the sale itself, the district court considered only its troubling aspects, declaring (incorrectly) that Sims's reason was "immaterial." But "a defendant's motive is a relevant—and often important—factor under the Guidelines." *Boucher*, 937 F.3d at 709; *see also United States v. Borden*, 365 F. App'x 617, 622 (6th Cir. 2010); *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006). We should consider the specific circumstances and ask whether selling a pistol to a friend who seeks protection because he was "robbed at his house,"

---

[2] *See* Mariel Alper et al., U.S. Dep't of Justice Statistics, *2018 Update on Prisoner Recidivism: A 9-Year Follow-up Period (2005-2014)* at 11 (May 2018), https://www.bjs.gov/content/pub/pdf/18upr9yfup0514.pdf.

[3] John G. Sprankling, *Owning Marijuana*, 14 Duke J. Const. L. & Pub. Pol'y 1, 16 (2019). *See* Ohio Rev. Code §§ 3796.01 *et seq.* (legalizing marijuana for medical purposes); 2019 Ohio S.B. 57 (legalizing hemp). *See* Cincinnati, Ohio Code of Ordinances § 910-23 (providing for a zero-dollar fine for possession of less than 100 grams of marijuana, and explaining that a conviction for violation of the section "does not constitute a criminal record").

[4] *See, e.g.*, *United States v. Shanklin*, 924 F.3d 905, 911 (6th Cir. 2019) (loaded); *United States v. Massey*, 758 F. App'x 455, 457 (6th Cir. 2018) (per curiam) (loaded plus extra ammunition); *United States v. Stafford*, 721 F.3d 380, 387–88 (6th Cir. 2013) (fired); *United States v. Angel*, 576 F.3d 318, 319–20 (6th Cir. 2009) (loaded plus extra ammunition); *United States v. Maxon*, 250 F. App'x 129, 130 (6th Cir. 2007) (fired); *United States v. Cheney*, 183 F. App'x 516, 517 (6th Cir. 2006) (loaded).

is worse than mine-run firearm possession—a category that routinely includes possessing a gun to protect a drug stash.[5]

Asking the correct questions reveals that this case is in the heartland. Applying "closer review" to this sentence, *Kimbrough*, 552 U.S. at 109, requires us to ask what "compelling" reason the district court gave to vary, *Gall*, 552 U.S. at 50.

The district court apparently thought that a compelling justification was unnecessary because a one-year upward variance from the top of the Guidelines range was "not substantial in [the court's] view." The court deemed this variance small by reference to its own original intention "to vary upward to the mid range of the statutory penalty of 60 months." But the statutory range is not the starting point for the sentencing court's analysis. *See United States v. Poynter*, 495 F.3d 349, 355 (6th Cir. 2007) (explaining that though the statutory maximum may eliminate a risk of disparity created by sentences above the maximum, "that maximum does little to diminish disparities for individuals who receive (or should receive) sentences below [the maximum]"). The beginning point should be the Guidelines, which are designed to diminish sentencing disparities among similar defendants. *Id.*

The inquiry is not complete until we consider the special circumstances and potential justifications that are applicable under § 3553(a), particularly those argued by the defense. First, the Government let Sims remain in the community for more than two years after the gun sale took place in January 2016. During that period, Sims's only offenses were vehicular infractions. The district court refused to consider that recent history on the basis that Sims "knew that this was, this case might be coming down the road, so what effect that had on his behavior, I do not know." This

---

[5] *See, e.g., Shanklin*, 924 F.3d at 910–11; *Massey*, 758 F. App'x at 457; *Angel*, 576 F.3d at 320; *Cheney*, 183 F. App'x at 517.

is unwarranted speculation; there is no evidence in the record that Sims knew about his pending arraignment until he was approached by detectives in December 2017, two years after the sale. The court therefore should have assigned at least *some* weight to the Government's apparently justified belief that there was minimal need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (explaining that evidence of rehabilitation "may plainly be relevant to" several § 3553 factors, including deterrence).

Similarly, Sims had "demonstrate[d] an honest effort to turn his life around." *Boucher*, 937 F.3d at 711. In the years preceding his arrest, Sims (apparently for the first time in his life) got married, held down a steady job, and became active in the lives of his children and step-children. His son's preschool teacher described Sims's frequent attendance at school programs to "help[] out with the students," and the adopted father of another student explained that Sims's son was "thriving because of his father being active in his life." Sims's employer verified that his attendance and work product were "outstanding." Those achievements are made more significant by contrast to Sims's younger years. His parents struggled with substance abuse and physically and emotionally abused him to the point that he was twice placed in foster care. At age 15, Sims attempted suicide; he then dropped out of high school and began committing crimes. The district court failed to recognize the effort and the challenge of building a largely law-abiding life on those shaky foundations. Instead, it noted dismissively that it reviewed "the letters that were submitted in support and the certificates and what have you," and rattled off childhood abuse in a list of Sims's characteristics that included his "good physical health," his positive drug test at arraignment, and his plans to live with his wife upon release. Merely mentioning "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), may satisfy procedural reasonableness,

but substantive reasonableness requires at least some weighing of those characteristics. *Cf. Gall*, 552 U.S. at 59 ("The District Court quite reasonably attached great weight to Gall's self-motivated rehabilitation . . . .").

* * *

Evidence from all the stakeholders—The Sentencing Commission, trial and appellate judges, scholars, legal and correctional experts, and the incarcerated—reveals how hard it can be to understand and apply substantive reasonableness in sentencing. Those difficulties, however, provide no license to discount substantive reasonableness, equate it to procedural reasonableness, or substitute statutory maximums for real review. Those who must impose, review, or live with a sentence need a clearer grasp of the tenets of substantive reasonableness.

In *Kimbrough*, the Supreme Court set out an initial pathway, explaining one important purpose of substantive reasonableness review. Such review guards against unwanted discrepancies among sentences for comparable crimes and helps courts police systemic and historical problems with sentencing.[6] *Gall* teaches that appellate courts are to separately assess whether a procedurally reasonable sentence could create sentencing disparities. 552 U.S. at 49–51, 54–56. "[A] district judge who gives harsh sentences to Yankees fans and lenient sentences to Red Sox fans would not be acting reasonably even if her procedural rulings were impeccable." *Rita*, 551 U.S. at 365 (Stevens, J., concurring).

Substantive reasonableness review serves as a check and balance on the American sentencing system. Though the sentencing court's ring-side view puts it "in a superior position to

---

[6] *See* Sonja B. Starr & M. Marit Rehavi, *Mandatory Sentencing and Racial Disparity: Assessing the Role of Prosecutors and the Effects of* Booker, 123 Yale L.J. 2, 78 (2013) ("After controlling for the arrest offense, criminal history, and other prior characteristics, sentences for black male arrestees diverge substantially from those of white male arrestees . . . .").

find facts and judge their import under § 3553(a) in the individual case," *Gall*, 552 U.S. at 51, our bird's-eye view means we "are far better positioned to assess whether a sentence qualifies as an outlier than a district court judge who would have to make an active effort to understand how his sentencing practices rate with those of his colleagues." Note, *More Than A Formality: The Case for Meaningful Substantive Reasonableness Review*, 127 Harv. L. Rev. 951, 967 (2014).

It is undoubtably a challenge to distinguish a harsh-but-reasonable sentence from an unreasonably harsh sentence. But that provides no basis for failing to perform substantive reasonableness review to determine whether the sentence imposed is "sufficient, but not greater than necessary." §3553(a). There are guideposts available for assessing substantive reasonableness as a distinct inquiry. We should employ them more thoroughly.

I agree that Sims broke the law. His unreasonably harsh sentence, however, fails the substantive reasonableness test. I therefore respectfully dissent.